IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ADESTA COMMUNICATIONS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | 8:08cv3046 |
| vs. | ) ) | |
| | ) | MEMORANDUM AND |
| UTICA MUTUAL INSURANCE COMPANY, a New York corporation, | ) ) ) | ORDER |
| Defendant. | ) | |

This matter is before the court on the defendant's motion pursuant to 28 U.S.C. § 1404 to transfer venue to the U.S. District Court for the District of Colorado. Having carefully considered the parties' written submissions (Filings 13, 14, 15, 20, 21, 22 & 25), the court finds that the motion should be granted.

**I. BACKGROUND**

**A. Pleadings Filed in This Action**

The plaintiff ("Adesta") is a Delaware corporation and maintains business offices in Douglas County, Nebraska. The defendant ("Utica") is a New York corporation licensed with the Nebraska Department of Insurance. Lee Engineering & Construction Co., Inc. ("Lee Engineering") is a Georgia corporation.

The complaint alleges that on February 18, 2000, Adesta and Lee Engineering entered into a written contract (the "Subcontract") in which Lee Engineering agreed to install fiber optic conduit and telecommunications facilities in a Colorado Department of Transportation right-of-way located near Denver, Colorado. The Subcontract provided that it was governed by Colorado law, and that disputes between Adesta and Lee Engineering would be resolved in the City and County of Denver.

The Subcontract allegedly incorporated the terms of a March 11, 1999 contract between Adesta and the State of Colorado (the "Prime Contract"), which provided that all work must be performed "in a safe and workmanlike manner consistent with generally accepted construction standards," and that all work must be performed in strict accordance with "all applicable Federal, State, County, City, Local laws, ordinances, rules and regulations of all authorities having jurisdiction over construction related to the project."

The Subcontract required Lee Engineering to furnish a performance and payment bond. Attached to the complaint is a copy of a performance and payment bond in the amount of $2,958,870, naming Lee Engineering as principal and Utica as surety. The bond was signed by Marilyn A. Blome, a resident of the State of Georgia, as attorney-in-fact for Utica. Other documents filed with the court indicate that Blome is an agent of Southeast Contract Bond Services, Inc. ("Southeast"), a Georgia corporation.

On April 7, 2007, Adesta received notification that Denver's sanitary sewer had been breached and damaged near the site of the construction project. The City/County claimed that Lee Engineering's conduct in performing the February 18, 2000 contract was the cause of the breach. Upon investigation, Adesta's agents agreed that the damage was caused by Lee Engineering. Adesta alleges that the defective work was latent and was located 10 feet underground, and would not have been discovered by the exercise of reasonable diligence.

Adesta alleges it incurred expenses of almost $150,000 in repairing the damage to the city sewer lines and damage from the sewer line breaches. Adesta made written demand upon Utica for reimbursement pursuant to the performance and payment bond.

Utica denied Adesta's claim for reimbursement on the ground that it neither approved nor provided the bond in question. Utica alleges in its answer that the agency which provided the bond "had neither Utica's permission, consent, authorization nor approval to provide said bond" and that Utica could not locate any record that it ever provided this bond. Utica affirmatively alleges, *inter alia*, that this action is barred by the applicable statute of limitations; Utica received neither a commission nor a premium for the bond; Adesta did not timely notify Utica of the alleged sewer problem and/or breach of warranty and Adesta's claim is barred because Utica was not afforded its right to remedy the alleged problems; and Adesta failed to join necessary and indispensable parties, i.e., Lee Engineering and Marilyn A. Blome.

**B. Pleadings Filed in Other Actions**

***1. Adesta v. Lee Engineering***

Adesta filed a federal lawsuit against Lee Engineering in the District of Colorado, Case No. 1:07-cv-237, on February 1, 2007. Records available on PACER, http://pacer.psc.uscourts.gov/ show that Case No. 1:07-cv-237 was dismissed without prejudice on August 2, 2007, pursuant to Fed. R. Civ. P. 41(a)(1)(i) upon notice that the parties had executed a settlement agreement. On January 31, 2008, however, Adesta sued Lee Engineering in Colorado state court, again seeking to recover the $148,552.16 in expenses it incurred repairing damage to the city sewer lines and damage from the sewer line breaches. (Doc. 14 at pp. 12-14). Counsel for Adesta states in his affidavit (Doc. 21 at p. 3) that neither of these lawsuits were ever prosecuted beyond service of summons and were filed "merely as a precaution to prevent any possibility of the running of a statute of limitations. They are both dismissed."

### *2. Utica v. Lee Engineering*

On May 19, 2008, Utica filed suit against Lee Engineering, Southeast, and Blome in the U.S. District Court for the District of Colorado, Case No. 1:08-cv-01044, *see* Doc. 22-2 at p. 10/43. Utica's complaint alleges that Lee Engineering contacted its insurance agent, who brokered the surety bond in question to Blome and Southeast. Utica and Southeast had entered into an Agency Agreement in October 1988. The Agency Agreement required Southeast to forward all insurance binders, applications, policies, endorsements, or certificates to Utica and to pay Utica all premiums whether or not collected by Southeast from the insured. Southeast also assumed all responsibility for the acts of commission or omission of any of its subagents. The Agency Agreement was signed by Marilyn A. Blome as president of Southeast. Utica alleges that Blome and/or Southeast issued the bond in violation of the Agency Agreement and without Utica's knowledge, consent, or permission.

Utica further alleges in the Colorado action that Lee Engineering executed a "General Agreement of Indemnity," requiring Lee Engineering to indemnify and hold Utica harmless from claims or liabilities Utica may pay or incur as a consequence of having executed or procured any bond. The indemnity agreement allegedly required Lee Engineering to post a bond or other sufficient security concerning the claim, and Lee Engineering has refused to do so.[1]

### II. LEGAL ANALYSIS

Utica requests that venue be transferred to the District of Colorado pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice,

---

[1]Subsequent pleadings in the Colorado Action can be reviewed on PACER, http://pacer.psc.uscourts.gov/.

a district court may transfer any civil action to any other district or division where it might have been brought."

### A. Where the action "might have been brought"

This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and Adesta and Utica are citizens of different states.

Pursuant to 28 U.S.C. § 1391(a)(2), venue in a diversity case is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Based on the factual allegations of the pleadings, summarized above, the court finds that venue in the District of Colorado would be proper, and the action could have been brought in the District of Colorado.

### B. Convenience of Parties & Witnesses

In general, the party seeking transfer bears the burden of establishing that the transfer should be granted. *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir .), *cert. denied*, 522 U.S. 1029 (1997); *Nelson v. Bekins Van Lines Co.*, 747 F. Supp. 532, 535 (D. Minn. 1990). The movant must make a clear showing that the balance of interest weighs in favor of the movant. *See General Comm. of Adjustment v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995); *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995). A transfer should not be granted if the effect is to merely shift the inconvenience from one party to the other. *Nelson*, 747 F. Supp. at 535 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)); *General Comm. of Adjustment*, 895 F. Supp. at 252; *see generally Ferens v. John Deere Co.*, 494 U.S. 516, 522-23 (1990). In order to prevail, the party seeking the change of venue must show that its inconvenience strongly outweighs

the inconvenience the opposing party would suffer if venue were transferred. *See Nelson*, 747 F. Supp. at 535.

Adesta states in its brief that it chose to file this action in Nebraska because its headquarters are located in Nebraska; it asserts a right to an award of attorney's fees under Nebraska law, and the Colorado court might misconstrue Nebraska law on this point; and Adesta's attorneys are located in Omaha, Nebraska. Although present counsel filed both of Adesta's earlier lawsuits against Lee Engineering in Colorado, Adesta's officers state Adesta would have to hire Denver counsel if this action is transferred to the District of Colorado. Adesta has provided no foundation for its assertion that Denver attorneys charge higher rates than Omaha attorneys.

Apparently, Lee Engineering (which is based in Georgia) stopped doing business in Colorado in about 2003. In December 2005, Lee Engineering filed a "Statement of Foreign Entity Withdrawal" with the Colorado Secretary of State advising that it "will no longer transact business or conduct activities in this state and it relinquishes its authority to transact business or conduct activities in this state." Representatives of Lee Engineering advised plaintiff's counsel that "All persons involved in the transactions between Lee Engineering & Construction Co. and Adesta are either deceased or incapacitated."

Apparently, five witnesses listed in Adesta's Rule 26(a)(1) disclosures are employees of Adesta LLC, a non-party based in Omaha that maintains "certain fiber optic conduit assets" of Adesta Communications, Inc. Adesta did not initially disclose the addresses of four of these witnesses and did not initially identify any subjects of discoverable information as to any of the five witnesses. Nevertheless, Adesta argues that at least one of the individuals is an essential witness not subject to personal jurisdiction in Colorado. According to plaintiff's counsel, all Adesta LLC

employees with knowledge "will appear for deposition in Omaha provided statutory transportation, witness, etc., fees are paid, regardless of whether they happened to be stationed in Omaha or not at the time."  (Doc. 22-2, p. 41/43).  Apparently, Adesta LLC is not willing to make its employees available for deposition or to testify in a forum other than Nebraska.

Adesta also contends that this matter should not be transferred to the District of Colorado because Utica's related claims against Southwest and Blome are subject to mandatory arbitration. Finally, Adesta speculates that the Colorado court cannot exercise personal jurisdiction over Lee Engineering as to Utica's claim for indemnity against Lee Engineering.

The Rule 26(a)(1) disclosures served by Utica identify numerous witnesses affiliated with the City of Denver, and witnesses who were last known to be employed in Adesta's regional office located in Denver, Colorado.  Utica contends that Adesta did not provide it with any notice of its claim on the performance bond until "months after the alleged problem was resolved." (Doc. 22 at p. 5/43).  Consequently, spoliation issues will require testimony from witnesses who reside in the Denver area.  The court agrees with Utica that the existence of an arbitration clause in its agreement with Southwest and/or Blome would not cause any court to lose jurisdiction over those parties. Adesta has, in fact, pled Colorado law, the forum selection clause in the Prime Contract (which is incorporated in the terms of the bond at issue) designates Colorado as the proper forum, and it strongly appears that most of the key witnesses are located in or near Denver, Colorado.

Despite Adesta's assertions to the contrary, it appears to this court that the most cost-effective forum for this lawsuit is the U.S. District Court for the District of Colorado.  It does not appear that the issue of liability on the bond (or the very existence of a bond) can be resolved without joining Lee Engineering, Southwest and Blome as parties.  Utica has a basis for raising issues of spoliation,

as Adesta completed repairs without first notifying Utica. The entire construction project took place near Denver, Colorado, and many witnesses are located near that city. Transferring this matter to the District of Colorado would not merely shift inconvenience from Utica to Adesta.

The court finds that Utica has shown that its inconvenience in defending this action in Nebraska strongly outweighs the inconvenience Adesta would suffer if venue were transferred to the District of Colorado.

### III. ORDER

For the reasons stated above, and pursuant to 28 U.S.C. § 636(b)(1)(A) and 28 U.S.C. § 1404(a),

**IT IS ORDERED** that Utica's motion [13] to transfer venue to the U.S. District Court for the District of Colorado is granted.

**IT IS FURTHER ORDERED** that operation of this order is stayed until **August 5, 2008** or until the final resolution of any appeal which may be filed pursuant to NECivR 72.2.[2]

**DATED July 16, 2008.**

BY THE COURT:

s/ F.A. Gossett
**United States Magistrate Judge**

---

[2]NECivR 72.2(a) provides:
**Statement of Appeal and Briefs.** As provided in Federal Rule of Civil Procedure 72(a), a party may appeal a magistrate judge's order in a nondispositive matter (i.e., not excepted by 28 U.S.C. § 636(b)(1)(A)) by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) business days after being served with the order, unless the order establishes a different time. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. A party may not merely reference or refile the original brief submitted to the magistrate judge. A party failing to file a brief in support of the appeal may be deemed to have abandoned the appeal. Unless otherwise ordered, any opposing party may file a brief opposing the appeal within ten (10) business days of being served with the statement of appeal, arguing that the order of the magistrate judge is not clearly erroneous or contrary to law.